FILED
2014 Jun-20  PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **EDDIE MICHAEL CHANDLER,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | **1:12-CV-8016-KOB** |
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court upon the petitioner Eddie Michael Chandler's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (Doc. 1). Mr. Chandler challenges this court's decision to revoke his supervised release and impose a 60-month sentence for allegedly cultivating marijuana. He alleges that he is innocent and that his current confinement is a result of his receiving ineffective assistance of counsel during the revocation and on direct appeal.

Upon consideration of the motion, the court finds no need for an evidentiary hearing on Mr. Chandler's ineffective assistance of counsel claims and will DENY Mr. Chandler's motion to vacate, set aside, or correct his sentence.

**I. BACKGROUND**

**1.  PREVIOUS CONVICTION**

On February 2, 2004, the United States charged both Eddie Michael Chandler and his brother, Phillip Earl Chandler, with (Count 1) unlawfully conspiring to manufacture 100 or more

1

marijuana plants in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) and (Count 2) unlawfully manufacturing 100 or more marijuana plants in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B). *United States v. Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 1).  In addition, the government charged Eddie Michael Chandler with (Count 3) possessing ammunition in interstate or foreign commerce after having been convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1).  *Id.*  Mr. Eddie Chandler, the petitioner in this case, pled guilty to these charges pursuant to a plea agreement on April 5, 2004.  *Id.*  (Doc. 34).  The court sentenced him to 27 months of imprisonment and 60 months of supervised release for conspiring to manufacture 100 or more marijuana plants in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  *Id.*  (Doc. 57).  The government dismissed Counts 2 and 3.

After Mr. Chandler finished his 27-month imprisonment, he began serving his 60 months of supervised release, the first condition of which was to "not commit another federal, state, or local crime."  *Id.*  Prior to the expiration of his supervised release, however, Mr. Chandler was arrested on charges of trafficking marijuana.  (Doc. 1).  On June 17, 2010, two days after his arrest, the United States Government filed a motion to revoke Mr. Chandler's supervised release for violating a state law.  *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 67).

## 2.  REVOCATION HEARING

On July 19, 2010, this court held an evidentiary hearing on the petition to revoke Mr. Chandler's supervision.  Mr. Chandler retained Mr. William H. Broome, the attorney representing Mr. Chandler on the underlying state charges, as counsel.  The government's evidence showed that on June 15, 2010, the Alabama Marijuana Eradication (AME) team located several marijuana plots near Highway 21 and Piedmont Springs Road in Calhoun County,

2

Alabama when performing a helicopter sweep of the area.  *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 92, at 9).  From the air, the AME team saw what appeared to be four-wheeler trails running from Mr. Chandler's residence on Piedmont Springs Road to a dirt road, off of which at least one of the marijuana fields was located.  *Id.*  (Doc. 92, at 11).  Investigator Allen testified that two of the seven or eight  plots discovered were approximately 50–60 and 150 yards away from Mr. Chandler's house respectively.  *Id.*  (Doc. 92, at 10–11).  Mr. Chandler, however, maintains that no dirt road exists and that the plots Investigator Allen spoke of were 75–80 and 350–400 yards away from his house respectively.  (Doc. 2, Exhibit A, at 2–3).

Investigator Allen also testified that while the AME Team was sweeping the area, Mr. Chandler's wife, Michelle, contacted the Alabama Bureau of Investigations to find out why a helicopter was flying so close to her home.  *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 92, at 20).  In response to her phone call, the AME team sent Investigator Allen to speak with her.  *Id.*  (Doc. 92, at 20).  When Michelle Chandler saw the fifty-eight marijuana plants Investigator Allen had collected on the back of his four wheeler, she allegedly became upset and told Investigator Allen that she had suspected her husband was growing marijuana because he had grown marijuana in the past and he frequently left on his four wheeler for extended periods of time.  *Id.*  (Doc. 92, at 20–21).  Before Michelle left to take her daughter to a doctor's appointment, she informed Investigator Allen that her husband's White Ford Expedition and four wheeler were gone.  *Id.*  (Doc. 92, at 24).

After receiving this information, Investigator Allen sent Investigator Stone to obtain a search warrant while he went to get some lunch and monitor the house.  *Id.*  (Doc. 92, at 23).  While on the road, Investigator Allen saw a white Ford Expedition towing a utility trailer with

3

two four wheelers on it.  Upon noticing that neither of its occupants—Eddie and Phillip

Chandler—was wearing a seatbelt, Investigator Allen pulled the vehicle over.  *Id.*  (Doc. 92, at

24).  According to Investigator Allen, at some point during the stop, he asked for and received

Mr. Chandler's consent to search Mr. Chandler's vehicle and attached four wheelers.  *Id.*  (Doc.

92, at 25).  Mr. Chandler disputes Investigator Allen's version of events.[1]

In conducting the search, Investigator Allen found several coffee cans filled with Miracle-

Gro; eight to ten water bottles; two turkey hunting masks, at least one of which was wet with

sweat; opened and unopened packages of trot line cord that looked very similar to the cord found

in the marijuana fields; a shovel; a saw; two saddle bags; a bucket; and some water cans.  *Id.*

(Doc. 92, at 25–32).  The government's theory at the revocation hearing was that Mr. Chandler

and his brother used the four wheelers, Miracle-Gro, water, cord, and shovel to tend to their

marijuana crops.  Because both Mr. Chandler and his brother had been previously convicted of

cultivating marijuana after authorities identified their faces in footage taken by hidden cameras,

the government argued that the turkey hunting masks were used to conceal their identities.  The

saw was allegedly necessary to cut through the thick brush surrounding some of the plots.

---

[1]  Investigator Allen's testimony suggests that he obtained consent to search prior to
arresting Mr. Chandler, *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG (Doc. 92, at 25),
but Mr. Broome's motion to suppress filed in the underlying state case states that Mr. Chandler
was already secured and handcuffed at the time of the initial search, (Doc. 11, Exhibit A, at 9).
Mr. Chandler firmly denies ever giving Investigator Allen his consent to search his vehicle.
(Doc. 2, Exhibit A, at 4).

Additionally, Mr. Chandler also testified that he was wearing his seatbelt at the time
Investigator Allen pulled him over, and that the first thing Investigator Allen said to Mr.
Chandler after stopping his vehicle is that he was under arrest for trafficking marijuana.  (Doc.
24-1, at 1–2; *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG (Doc. 92, at 168)).

Mr. Chandler testified at the revocation hearing that he used the gardening items to tend both his mother's and his own garden, the trot line for fishing, and the turkey hunting mask to call turkeys (even though it was not turkey hunting season at the time).  Despite his testimony, the court determined that the government had proven *by a preponderance of the evidence* that Mr. Chandler had more likely than not violated the terms of his supervised release.  Accordingly, the court revoked Mr. Chandler's supervised released and ordered that he serve 60 months in the United States Bureau of Prisons with no term of supervised release to follow.  *Id.* (Doc. 75).  The court also ordered that such a sentence should run consecutively to any yet-to-be-imposed sentence on the underlying state law violation.  *Id.*

### 3.  APPEAL OF REVOCATION AND HABEAS PETITION

On July 30, 2010, Mr. Chandler appealed this court's decision to revoke his supervised release.  *United States v. Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG (Doc. 80).  On the same day, Mr. Broome filed a motion to withdraw from the federal case because Mr. Chandler had retained Mr. Broome only to litigate the underlying state case and "d[id] not have the funds or liquid assets to hire an attorney to represent him on appeal." *Id.*  (Doc. 79).[2]

On August 6, 2010, this court granted Mr. Broome's motion to withdraw as Mr. Chandler's retained attorney, and recommended to the Eleventh Circuit Court of Appeals that Mr. Broome be appointed under the Criminal Justice Act Plan to perfect Mr. Chandler's appeal. This court noted that appointing Mr. Broome would save resources because Mr. Broome was present during the revocation proceeding that Mr. Chandler was appealing.  *Id.*  (Doc. 86).  On

---

[2]  Because Mr. Broome was familiar with the underlying state case, Mr. Broome had agreed to represent Mr. Chandler at the revocation hearing at no additional cost.  *Id.*  (Doc. 86).

February 10, 2011, the Eleventh Circuit Court of Appeals appointed Mr. Broome to represent

Mr. Chandler, pursuant to this court's recommendation.  *Id.*  (Doc. 95).  On August 29, 2011 the

Court of Appeals affirmed this court's revocation of supervised release and decision to impose a

60-month prison sentence.  *Id.*  (Doc. 97).

On April 19, 2012, Mr. Chandler filed a *pro se* motion to vacate, set aside, or correct his

sentence under 28 U.S.C. § 2255.  (Doc. 1).  All of Mr. Chandler's arguments in his § 2255

motion allege that Mr. Broome provided ineffective assistance of counsel to Mr. Chandler in

various ways while preparing for, participating in, and appealing his revocation hearing.

## II. LEGAL STANDARD

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

established a two-part test for determining whether an attorney's representation violates a

criminal defendant's Sixth Amendment right to effective assistance of counsel.  To succeed in

demonstrating that counsel was ineffective, the petitioner must show *both* that (1) "counsel's

representation fell below an objective standard of reasonableness," *and* that (2) "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 687–88, 694.

The burden of proving ineffective assistance under this test remains with the petitioner at

all times.  *See Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000).  Additionally, because

the petitioner must prove *both* parts of the test to prevail on an ineffective assistance claim, the

court may evaluate the elements in any order and does not have to address both prongs if it

determines the petitioner has failed to meet either of them.  *Strickland*, 466 U.S. at 697.

In applying this two-part test to a claim of ineffective assistance of counsel, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696. The court must determine whether, "despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

## 1. THE PERFORMANCE PRONG

Because hindsight may have "distorting effects" on a court's evaluation of an attorney's prior conduct, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the Supreme Court instructed trial courts to approach a claim of ineffective assistance of counsel with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In addition, the court must also evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689–90. To succeed on this first prong, a petitioner must specifically "identify the acts or omissions of counsel" that he alleges demonstrate unreasonable professional judgment. *Id.* at 690.

In applying this test, the Eleventh Circuit Court of Appeals clarified that "'[t]he test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The test] ask[s] only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.'" *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)). In other words, "to show that counsel's performance was unreasonable, the

petitioner must establish that *no competent counsel would have taken the action that [the petitioner's] counsel did take*."  *Grayson*, 257 F.3d at 1216 (emphasis in original).

## 2. THE PREJUDICE PRONG

Even if the court determines that an attorney's conduct was not reasonable, the petitioner cannot succeed on his ineffective assistance of counsel claim unless he can also "affirmatively prove prejudice."  *Strickland*, 466 U.S. at 692.  A petitioner proves prejudice by demonstrating a "reasonable probability" that the result would have been different.  *Id.* at 694.   The United States Supreme Court defines a "reasonable probability" as one that is "sufficient to undermine confidence in the outcome" and instructed courts to "consider the totality of the evidence before the judge or jury" in making its determination.  *Id.* at 695–96.  Because the focus is on whether the outcome of the proceeding would have been different, the "governing legal standard [of the proceeding] plays a critical role . . . in assessing the prejudice from counsel's errors."  *Id.* at 695.

## III. DISCUSSION

Although Mr. Chandler makes a very thorough claim that Mr. Broome provided ineffective assistance of counsel, this court finds that Mr. Chandler has not met the high burden for showing *both* that Mr. Broome acted unreasonably and that Mr. Broome's actions prejudiced Chandler.  The court will address each of Mr. Chandler's arguments individually.

## 1.  GROUND A: INEFFECTIVE ASSISTANCE OF COUNSEL GENERALLY

In Mr. Chandler's first ground for relief, he asserts that "the totality of instances of objectively unreasonable conduct (and omissions) by trial counsel resulted in a fundamentally and constitutionally deficient Revocation Hearing," materially prejudicing his case.  (Doc. 2, at 10).  This general claim of ineffective assistance fails to state grounds for relief, however,

8

because it does not "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Boyd v. Comm'r, Ala. Dept. of Corrs.*, 697 F.3d 1320, 1333 (11th Cir. 2012) (upholding the lower court's rejection of petitioner's ineffective assistance of counsel claim on the grounds that the petitioner failed to provide "any explication, specificity or detail" on what the allegedly omitted mitigation factors even were or how they would have impacted the case).

While the court examines the totality of the circumstances, it does so to understand the prejudicial impact of a *specific* act or omission in the context of a particular proceeding. *See Strickland*, 466 U.S. at 695. Where a petitioner does not specify which acts of misconduct are at issue, the court is not required to bear the burden of proof and identify every possible ground for relief under an ineffective assistance of counsel framework. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("The burden of persuasion is on a *petitioner* to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable.") (emphasis added)). Instead, the court retains the "strong presumption" that the attorney's conduct was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Because Mr. Chandler's first ground for relief was too vague, this court finds that he fails to establish an ineffective assistance of counsel claim on this count. In addition, even when considering all of Mr. Chandler's specific allegations of ineffective assistance of counsel collectively—none of which, for the reasons discussed below, meets the *Strickland* standard individually—this court cannot find that Mr. Chandler has made a claim of ineffective assistance of counsel.

**2.  GROUNDS B AND C: INEFFECTIVE ASSISTANCE OF COUNSEL DURING
PRE-REVOCATION HEARING PREPARATION AND INEFFECTIVE
ASSISTANCE OF COUNSEL DURING THE REVOCATION HEARING**

In Mr. Chandler's second and third grounds for relief, he outlines a litany of specific
failures that he claims demonstrate that Mr. Broome provided ineffective assistance of counsel
during both his pre-revocation hearing preparation and investigation and during his revocation
hearing.  Because the specific claims for relief are nearly identical in Grounds B and C, this court
will consider them simultaneously.

First, Mr. Chandler alleges Mr. Broome unreasonably failed to engage a private
investigator to corroborate Mr. Chandler's statement of the facts.  Second, Mr. Chandler argues
Mr. Broome failed to take or use photography to rebut the testimony of Investigator Allen.
Third, Mr. Chandler claims Mr. Broome failed to prepare both Mr. Chandler and his wife,
Michelle Chandler, to testify at the hearing.  Fourth, Mr. Chandler asserts Mr. Broome failed to
conduct any pre-hearing written or oral discovery, and in particular, failed to depose Mr. Allen
prior to the revocation hearing.  Finally, Mr. Chandler objects to Mr. Broome's failure to file a
motion to suppress the evidence discovered during the allegedly unlawful search of his vehicle.
(Docs. 1–2).

### *(i). Failure to Hire an Investigator*

In Mr. Chandler's first objection to Mr. Broome's pre-revocation hearing misconduct, he
alleges that Mr. Broome failed to retain a private investigator to help Mr. Broome challenge

Investigator Allen's credibility and weaken the link between Mr. Chandler and the crime.[3]  (Doc. 2, at 11–12).

In response to this allegation, Mr. Broome stated in his affidavit that he did, in fact, retain a private investigator, who accompanied him to Mr. Chandler's home on or about June 26, 2010. (Doc. 18).  Mr. Broome avers that he spent a total of seven hours over two separate visits walking and driving through the 150 acres surrounding Mr. Chandler's home—once alone and once with the private investigator.  On both occasions, Mr. Broome personally took photographs of the area.  (Doc. 18, at 3–5).

Mr. Broome explained that he did not call the private investigator as a witness because the Government had stipulated to the introduction of his photographs; additionally, because "the testimony of the private investigator would have more clearly pinpointed the exact location of the seized marijuana plants," Mr. Broome determined that the private investigator's testimony would have been "more damaging than helpful to [Mr. Chandler's] defense."  *Id.*  Mr. Broome based his decision on his knowledge of Investigator Allen's testimony at the revocation hearing and the fact that his whole defense strategy centered on the Government's failure to produce enough evidence connecting Mr. Chandler to the marijuana plots.  (Doc. 18, at 6).  Thus, he viewed any testimony that would strengthen the link between Mr. Chandler and the marijuana plots to be detrimental to Mr. Chandler's case.

---

[3]  Specifically, Mr. Chandler alleges that a private investigator would have testified that no four wheeler trail ran from Mr. Chandler's residence to the alleged 'pot patch'; no dirt road behind Mr. Chandler's house exists; no one could drive a four wheeler around the dam of the lake because the space is too narrow; Mr. Chandler did, in fact, travel to his mother's house to water and fertilize her garden; and Mr. Chandler did grow late tomato plants and okra.  (Doc. 2, at 11–12).

In his reply, Mr. Chandler states that Mr. Broome's strategy for not calling the personal investigator as a witness was "both illogical and contrary to reason."  (Doc. 19, at 3).  Mr. Chandler argues that knowing exactly where the marijuana plants were could have only assisted his defense, primarily because it would have undermined Investigator Allen's testimony.  *Id.* at 3, fn.3.  In support of his argument, Mr. Chandler outlines a series of facts[4] he alleges the private investigator would have uncovered that would have contradicted Investigator Allen's statements at the hearing.  *Id.* at 14–16.

Because Mr. Broome testified that he *did* actually hire a private investigator, this court will consider only Mr. Chandler's claim that Mr. Broome's decision not to have the private investigator testify was objectively unreasonable.[5]  Generally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)[6]; *see also Elso v. United States*, No. 12-13831,

---

[4]  Mr. Chandler alleges the personal investigator would have testified that no dirt road exists on Mr. Chandler's property; that the pot patch was 350–400 yards from Mr. Chandler's home, not 100–150 yards away, as Investigator Allen testified; that Michelle Chandler did not actually state that she suspected Mr. Chandler and his brother were growing pot; that the four wheeler trail did not extend entirely around the lake because the dam is too narrow for a four wheeler; that the cord found in the four wheeler was not the same cord found in the field; and that no one could see a marijuana plant 3/4 of a mile away, which Investigator Allen testified was the distance between the farthest field of marijuana and Mr. Chandler's house.  (Doc. 19 at 14–16).

[5]  This court also notes that Michelle Chandler's affidavit recounts an instance in which Mr. Broome brought a personal investigator to the home.  (Doc. 27, at 15).

[6]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

2013 WL 6767832, at *2 (11th Cir. Dec. 24, 2013).   Indeed, although Mr. Chandler asserts that

the testimony would have only been favorable to him, "evidence about the testimony of a

putative witness must generally be presented in the form of actual testimony by the witness or an

affidavit. . . . [S]elf-serving speculation will not sustain an ineffective assistance claim." *Mills v.

United States*, Civil Action No. 2:11cv535-MHT, 2013 WL 6145550, at *4 (M.D. Ala. Nov. 21,

2013) (quoting *United States v. Ashimi*, 932 F.2d 642, 650 (7th Cir. 1991) (footnotes omitted));

*see also Sinclair v. Ferrell*, Civil Action No. 07-00214-CG-B, 2010 WL 1487820, at *6 (S.D.

Ala. March 15, 2010) ("[S]elf-serving speculation about putative witness testimony will not

sustain an [in]effective assistance of counsel claim.").   Here, Mr. Chandler failed to submit an

affidavit from the investigator Mr. Broome hired or provide any other direct evidence of what an

investigator would have been able to state in support of his claim.

 Consequently, the court must defer to the strong presumption that Mr. Broome acted

"within the wide range of reasonable professional assistance."   *Strickland*, 466 U.S. at 689.   Mr.

Broome's explanation of his trial strategy is reasonable, and the petitioner's failure to provide

anything more than speculation as to what the testimony of the private investigator would have

been is not enough to rebut the presumption of reasonable professional conduct.   Even assuming

that the private investigator would have testified concerning the items Mr. Chandler specifically

identified, he failed to prove that "no competent counsel" would have chosen not to call the

private investigator as a witness, given Mr. Broome's concerns about what evidence the direct or

cross-examination of the investigator might have revealed.   *See Grayson v. Thompson*, 257 F.3d

1194, 1216 (11th Cir. 2001).   Thus, Mr. Chandler's argument that Mr. Broome provided

ineffective assistance of counsel fails both because Mr. Broome's decision not to call the private

investigator as a witness was reasonable and because Mr. Chandler cannot show he was

prejudiced by Mr. Broome's decision.

### (ii).  *Failure to Take or Use Photographs*

Mr. Chandler additionally alleges that Mr. Broome provided ineffective assistance of

counsel by failing to take and use sufficient photography of Mr. Chandler's property to be able to

rebut the expected testimony of Investigator Allen.  (Doc. 2, at 10).  In response, Mr. Broome

testified that he "personally photographed" the Chandler property and the marijuana plots and

surrounding areas, appending to his affidavit a copy of the 38 photographs.  (Doc. 18, at 3, 4, 5).

In explaining why he did not introduce all of the photographs he made, Mr. Broome testified that

he thought that his photographs were more incriminating than the aerial photographs the

government introduced because his photographs would have "more clearly delineated the

location where the marijuana plants were discovered and more distinctly connected the marijuana

plants to Mr. Chandler."  (Doc. 18, at 5).  Mr. Broome did, however, introduce at least some of

his photographs during the revocation hearing.  (Doc. 18, at 5).

In reply, Mr. Chandler states that Mr. Broome's decision to introduce only certain

photographs into evidence was "illogical and not worthy of serious consideration."  (Doc. 19, at

2).  He argues that no justification other than serious lack of preparation can explain why Mr.

Broome did not introduce certain photographs that show no dirt road exists near Mr. Chandler's

property and that the distance from Mr. Chandler's house to the pot patch was more than 100

yards.  (Doc. 19, at 3).

Because Mr. Broome's submission of the photographs demonstrates that he did actually

take photographs of Mr. Chandler's property—some of which were received into evidence at the

14

hearing—this court will consider only Mr. Chandler's claim that Mr. Broome's failure to offer other photographs into evidence constituted ineffective assistance of counsel.  Mr. Broome's explanation of why he introduced only certain photographs is reasonable, given his strategy to avoid any evidence that would make the connection between Mr. Chandler and the marijuana plots easier to draw.  Although Mr. Chandler specifically argues that certain photographs definitively prove that no dirt road exists—contradicting Investigator Allen's testimony and attenuating the link between Mr. Chandler and the marijuana (doc. 19, at 13)—this court cannot say that no reasonable attorney would have chosen not to introduce those photographs. According to Mr. Broome, the photographs were more damming than helpful, and, contrary to Mr. Chandler's claims, nothing in the images definitively proves that no dirt road exists.   Mr. Broome's photographs consist of ground-level shots of large open fields near Mr. Chandler's home.  The tall grass shown in the images may have obscured a dirt road, for example.

Ultimately, none of his shots contradict the government's photographs, which provide a bird's eye perspective of Mr. Chandler's property and surrounding area and suggest that such a road does exist.  The court, therefore, agrees with Mr. Broome's assessment of the photographs; even assuming the images may have been helpful to the defense, the court must apply the broad presumption that Mr. Broome acted reasonably and find that Mr. Chandler has not offered enough evidence to suggest that Mr. Broome's strategy was objectively unreasonable.

Even if, however, this court were to assume for the sake of argument that "no competent counsel" would have made the strategic choice Mr. Broome made as to which photographs to admit and which to exclude, Mr. Chandler still fails to demonstrate a "reasonable" probability that the result would have been different.  *See Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th

Cir. 2001); *Strickland*, 466 U.S. at 694.  Even had Mr. Broome been able to demonstrate that no

dirt road exists near the Chandler's property and that the distance from Mr. Chandler's house to

the pot patch was more than 100 yards away, Mr. Chandler failed to prove that the other

circumstantial evidence—which included the testimony of Mr. Chandler's own wife admitting

that she had suspected Mr. Chandler of growing marijuana[7] and the observations of Investigator

Allen—would not have been strong enough to meet the preponderance of the evidence standard

governing revocation hearings.  *See* 18 U.S.C. § 3583(e)(3) ("The court may . . .  revoke a term

of supervised release . . . if the court, pursuant to the Federal Rules of Criminal Procedure

applicable to revocation of probation or supervised release, finds by a preponderance of the

evidence that the defendant violated a condition of supervised release . . . ."); *see also Hardy v.*

*United States*, Nos. 1:05-cr-22-WLS, 1:08-c-90027-WLS, 2010 WL 4260212, at *2 (M.D. Ga.

Oct. 21, 2010) (holding that counsel's failure to proffer photographs that petitioner alleged would

have established the police unlawfully searched the petitioner's vehicle did not constitute

ineffective assistance of counsel where the petitioner failed to demonstrate that the outcome of

his case would have been different.).

Thus, Mr. Chandler's ineffective assistance of counsel claim regarding Mr. Broome's

choice to withhold certain photographs from the revocation hearing is without merit, both

because Mr. Broome's decision was not objectively unreasonable and because Mr. Chandler

cannot demonstrate prejudice.

---

[7]  *See United States v. Chandler*, Case No. CR-04-BE-46-E, (doc. 92, at 120).

16

### *(iii). Failure to prepare Mr. Chandler or Michelle Chandler to testify at Revocation Hearing*

Mr. Chandler also alleges that Mr. Broome provided ineffective assistance of counsel in failing to meet with Mr. Chandler's wife, Michelle, or with Mr. Chandler himself prior to the revocation hearing to prepare them each to testify. (Doc. 2, at 12). Mr. Chandler alleges that Mr. Broome's failure to prepare them caused (1) Mr. Chandler to be unprepared to refute Investigator Allen's false statements, (2) the judge to doubt the credibility of the witnesses who testified on Mr. Chandler's behalf at the revocation hearing, (3) Mr. Broome to be ineffective in direct examination of Mr. Chandler and Michelle, and (4) Mr. Broome to be ineffective in cross-examining Investigator Allen. (Doc. 2, at 12–13, 15). As evidence of Mr. Broome's lack of preparation, Mr. Chandler reports that a few minutes before calling Michelle to the stand, Mr. Broome asked Mr. Chandler if her testimony would hurt their case. (Doc. 2, at 7–8). In addition, following Michelle's testimony, Mr. Broome allegedly told Mr. Chandler, "[T]hat did not go as well as I would have hoped." (Doc. 2, at 7–8).

Contrary to Mr. Chandler's allegations, Mr. Broome testifies in his affidavit that he met numerous times with Michelle and Mr. Chandler. (Doc. 18, at 4–5, 7). In particular, Mr. Broome cites to notes he had taken on both July 10, 2010 and July 18, 2010, in which he recorded having a 2.7- and a 3.0-hour conference respectively with Mr. Chandler to prepare him to testify at the revocation hearing. (Doc. 18, at 5). Mr. Broome additionally explains that although he did his best to prepare Michelle to testify, he considered her a "'risky witness' at best because of her knowledge." (Doc. 18, at 4). In light of this concern, he asked Mr. Chandler

during the hearing whether Michelle's testimony would hurt their case.  (Doc. 18, at 4).  In response, however, Mr. Chandler allegedly stated that he wanted her to testify.  (Doc. 18, at 4).

In his reply, Mr. Chandler challenges the truthfulness of Mr. Broome's statement in his affidavit that he had numerous phone conversations with Michelle prior to the revocation hearing or that he met with Mr. Chandler for more than a total of one hour prior to the revocation hearing.  (Doc. 19, at 12–13).  In addition, Mr. Chandler maintains that he never insisted or even encouraged Mr. Broome to call Michelle to testify.

This court finds that Mr. Broome's records and Mr. Chandler's subsequent statements suggest that Mr. Broome *did* actually meet with and prepare both Mr. Chandler and his wife Michelle.[8]  Additionally, even if Mr. Broome could have done more to prepare Mr. Chandler and his wife to testify,  Mr. Chandler has not shown that Mr. Broome's preparation in meeting multiple times with both witnesses fell below prevailing professional norms.  *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

---

[8]  Mr. Chandler himself later admitted that Mr. Broome met with Michelle Chandler in preparation for the revocation hearing.  In a declaration attached to Mr. Chandler's memorandum of law supporting his § 22255 motion, Mr. Chandler accused Mr. Broome of calling Michelle to testify despite Mr. Broome's knowledge that she would be a "hostile witness."  (Doc. 2, Exhibit A, at 7).  Mr. Chandler argued that Mr. Broome should have known she would be hostile (and thus should have examined her on cross-examination instead of direct examination) because "[p]rior to [Mr. Chandler's] Revocation Hearing, Attorney Broome [had] met with and purportedly prepared [Michelle] for her testimony at the Revocation Hearing."  *Id.*  Far from stating an independent claim of ineffective assistance of counsel, however, this argument admits that Mr. Chandler knew Mr. Broome had met with and attempted to prepare Michelle for her testimony.  *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); *see also* (doc. 19, at 6 n.5).

18

The fact that Mr. Broome sought Mr. Chandler's advice on whether to call Michelle as a witness is not in-and-of-itself evidence of a failure to prepare.  Many decisions regarding which witnesses to call can change depending on how the opponent's case proceeds.  Having viewed Michelle as a risky witness prior to the hearing, Mr. Broome may have wanted to gauge Mr. Chandler's desire to have her testify before deciding whether to call her as a witness. Communicating with a client about risky trial strategies is not evidence of a lack of preparation.

Even if this court assumes *arguendo* that Mr. Broome's preparation of both Michelle and Mr. Chandler somehow fell below the standard of reasonable professional conduct required by the Constitution—which the court specifically finds it did not—Mr. Chandler has failed to prove the four different kinds of prejudice he alleges in his petition.  *See Strickland*, 466 U.S. at 692. First, Mr. Chandler's vague assertion that his own lack of preparation prevented him from adequately refuting Investigator Allen's testimony fails to explain how his testimony would have been different had he been more prepared to testify.  Second, Mr. Chandler's argument that the lack of preparation undermined the credibility of the witnesses is not specific enough for that court to evaluate it for prejudice.  In fact, in making its decision to revoke Mr. Chandler's supervised release, the court stated that it "found Mrs. Chandler's testimony to be very truthful." *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 92, at 212).  As to the court's determination that Mr. Chandler himself lacked credibility, the court pointed to specific parts of his story that did not seem believable—not Mr. Chandler's inconsistency in telling the story.[9]

---

[9] For example, the court found it interesting that Mr. Chandler testified he was looking for a place to set out the trot line but he had not gotten the hooks or a fishing license yet. Similarly, the court questioned why a turkey mask would be useful when Mr. Chandler and his brother were wearing jeans and a t-shirt instead of clothing that would blend in with the environment.  Finally, the court questioned why one of the masks was on the four wheeler when

Assuming the substance of Mr. Chandler's story would remain consistent even with better preparation, Mr. Chandler has failed to show how Mr. Broome's alleged failure to prepare Mr. Chandler to testify would have boosted his own credibility.

Third, Mr. Chandler also fails to show that Mr. Broome's alleged lack of preparation caused him to be ineffective on direct examination of Mr. Chandler and Michelle Chandler.  Mr. Chandler does not identify any specific instances of direct examination that evidence a failure to prepare or that suggest the outcome of the proceeding would have been different had Mr. Broome pursued a different line of questioning.

Finally, Mr. Chandler's argument that Mr. Broome's lack of preparation caused him to be ineffective on cross-examination of Investigator Allen lacks merit.   (Doc. 2, at 17).  The record shows ample evidence of Mr. Broome's prepared cross-examine Investigator Allen.  For example, Mr. Broome asked about the time of day the AME Team called Investigator Allen, and he tried to impeach him with his report that stated a different time of day (doc. 2, at 41–42);  he also pointed out that all of Investigator Allen's measurements were estimates (doc. 2, at 42);  in addition, he forced Investigator Allen to state that he did not know who owned the land where the marijuana was found (doc, 2, at 50, 55); and Mr. Broome got Investigator Allen to admit that he had no excuse for not making any photographs of the marijuana plants as they were growing in the field (doc, 2, at 57).

Even if Mr. Broome somehow could have been better prepared to cross-examine Investigator Allen, his conduct falls far below the culpability of the conduct discussed in the

---

Mr. Chandler testified that he walked to and from the creek.  Only after reciting all of these peculiarities in the story Mr. Chandler recounted did the court find Mr. Chandler lacked credibility. *Id.*  (Doc. 92, at 214–15).

cases Mr. Chandler cites as examples of courts finding an attorney's performance at trial deficient. Those cases actually demonstrate how minor Mr. Broome's alleged failures are in comparison.

For example, in *Pavel v. Hollins*, 261 F.3d 210 (2nd Cir. 2001), the Second Circuit held that counsel's performance was deficient in large part because he failed to prepare a defense at all, opting instead to rely on the hope that the trial judge would grant his motion to dismiss the charges. Mr. Broome's conduct at the revocation hearing does not come even close to resembling that kind of unreasonable risk-taking and proves that, unlike the counsel in *Pavel*, he did prepare a defense. Similarly, in *Burns v. Gammon*, 260 F.3d 892 (8th Cir. 2001), the Eighth Circuit concluded that counsel was ineffective for failing to object to the prosecutor's asking the jury, when determining guilt and sentencing, to consider the fact that the defendant forced the victim to attend trial, take the stand, and relive the attack because the defendant exercised his constitutional right to a jury trial and to confront witnesses. Mr. Broome's alleged failure to challenge Investigator Allen's testimony, however, pales in comparison with staying silent in the midst of such a flagrant and prejudicial constitutional violation. Ultimately, each example the petitioner cites supports the government's assertion that Mr. Broome's conduct was reasonable. *See Berryman v. Morton*, 100 F.3d 1089 (3rd Cir. 1996) (holding that counsel was ineffective for failing to utilize extremely inconsistent identification testimony in a rape case; relentlessly eliciting irrelevant, prejudicial testimony that was damaging to his client; and failing to investigate potential defense witnesses); *Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007) (holding counsel in arson trial ineffective, despite the fact that he hired an expert to testify,

because he failed to investigate or confer with the expert as to the possibility that the fire was not started the way the state's expert testified it started).

More crucially, Mr. Chandler has not demonstrated a reasonable probability that the outcome of his revocation hearing would have been different had Mr. Broome somehow been better prepared to cross-examine Investigator Allen. While Mr. Chandler vehemently disagrees with Investigator Allen's testimony about the existence of a dirt road or gravel trail that connects to both a four wheeler trail running from Mr. Chandler's home and a marijuana plot[10], the other circumstantial evidence the court specifically relied upon in making its determination would have remained even if Mr. Broome had been able to prove through cross-examination that Allen was mistaken about the existence of the road. Because a court decides revocation issues under the preponderance of the evidence standard, Mr. Chandler must meet a high bar to show that a failure to challenge one piece of circumstantial evidence would have reasonably affected the outcome of the proceeding. *See* 18 U.S.C. § 3583(e)(3). Here, he is unable to do so.

Ultimately, Mr. Chandler has not demonstrated how specific portions of the testimony would have been different had he and Michelle been more prepared to testify, and he is similarly unable to show how the supposed but undisclosed testimony on both direct and cross-examination would have changed the outcome of the revocation hearing. Such general assertions about counsel's failure fall short because Mr. Chandler did not provide enough specific evidence "sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 695–96; *see also Namur-Montalvo v. United States*, 1:05-CR-0477-CC-GGB, 2013 WL 1797104 (N.D. Ga.

---

[10]   *See United States v. Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG (doc. 92, at 11).

Apr. 26, 2013) (holding petitioner did not demonstrate how his counsel's alleged failure to prepare him to testify prejudiced him where the petitioner's testimony at trial was consistent and he did not make any damaging admissions).  Mr. Chandler failed to meet this burden here, and thus, even if this court were to assume purely for argument's sake that Mr. Broome did not adequately prepare Mr. Chandler and Michelle to testify, Mr. Chandler did not demonstrate he was prejudiced by this failure.[11]

### (iv).  Failure to Conduct Pre-Hearing Written or Oral Discovery

Mr. Chandler also claims that Mr. Broome provided ineffective assistance of counsel by failing to conduct any pre-hearing written or oral discovery, particularly regarding the evidence Investigator Allen, the government's sole testifying witness, would present to the court.  (Doc. 2, at 11).  In Mr. Chandler's declaration accompanying his motion, Mr. Chandler alleges that Mr. Broome did not conduct any pre-hearing discovery or attempt to depose Investigator Allen. (Doc. 2, Exhibit A, at 5).  Mr. Chandler outlines a list of facts he believes Mr. Broome would

---

[11]  In a footnote, (doc. 2, at 17 n.2), Mr. Chandler also claims that Mr. Broome's decision to object only once in combination with his failure to object to the court's remark about "mak[ing it clear that it's [the court's] intent that Mr. Eddie Chandler not be out on the streets," *United States v. Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG (doc. 92, at 234), failed to put the adversarial system to the test.  This court notes that Mr. Broome objected multiple times throughout the revocation hearing. *Id.* (doc. 92, at 11, 19, 26, 229).  Additionally, the "adversarial system" does not describe the relationship between an attorney and the court, but rather the relationship between a party and an opposing party.  *See Herring v. New York*, 422 U.S. 853, 862 (1975) ("The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.").

have been able to establish had he deposed Allen prior to the hearing and conducted pre-trial discovery.[12]

In response, Mr. Broome states that he received the following discovery items on June 21, 2010: (1) two Alabama Uniform Incident/Offense Reports dated June 16, 2010 and June 17, 2010; (2) an Alabama Uniform Arrest Report dated June 15, 2010; (3) an Application for Search Warrant and Affidavit in Support of Application for Search Warrant dated June 15, 2010; (4) a Search Warrant, dated June 15, 2010; (5) a Search Warrant and Return and Inventory dated June 15, 2010; (6) a Vehicle Impound Inventory dated June 15, 2010; and (7) an Evidence/Property Custody form dated June 15, 2010.  (Doc. 18, at 3).  In addition, Mr. Broome testifies that he went to Mr. Chandler's residence and personally photographed the area, hired a private investigator to accompany him through the 150 acres, met with Investigator Allen and Assistant District Attorney Ron Scarborough to discuss the facts of the case, and had numerous phone calls and meetings with Mr. Chandler and Michelle. (Doc. 18, at 3–5).

In Mr. Chandler's reply, he asserts that Mr. Broome never shared or revealed any of the discovery items he listed in his affidavit prior to the revocation hearing and argues that proper preparation required sharing and discussing that information with his client.  (Doc. 19, at 2, 11). Additionally, Mr. Chandler claims it is "not possible" for anyone to walk more than 40 acres in

---

[12]   Mr. Chandler states that Broome would have discovered that Allen was a newcomer to the police and not an expert at conducting drug investigations; that Allen's testimony was riddled with factual discrepancies; that Mr. Chandler only used his turkey calling mask for turkey calling; that one cannot drive a four wheeler around the top of the dam on the lake; that no trails from Mr. Chandler's house to the marijuana plots existed; that the protocol for all traffic stops is to either videotape the entire stop or provide a consent form for the stopped party to sign, neither of which was done here; and that Brian Studdard had information regarding Mr. Chandler's actual innocence.

the surrounding property because it is too overgrown.  (Doc. 19, at 12).  Mr. Chandler also contends that Broome had told him prior to the hearing that Investigator Allen would not meet him at the crime scene, discuss the location of the pot patch, or even speak with him.  (Doc. 19, at 12).  As to the seven hours Mr. Broome allegedly spent walking and driving through the crime scene, Mr. Chandler avers that "[i]t would not be reasonable to spend more than one hour to do the work that [Mr.] Broome did in exploring the property(s) [sic] and in taking photographs." (Doc. 19, at 13).  Finally, Mr. Chandler argues that if Mr. Broome had deposed Investigator Allen, Mr. Broome could have used the photographs to cross-examine Allen more effectively. (Doc. 19, at 13).

Unlike a civil defendant, a criminal defendant is only entitled to limited discovery. *Degen v. United States*, 517 U.S. 820, 826 (1996); *see also* Fed. R. Crim. P. 16(a)(2).  Mr. Chandler's claims that Mr. Broome failed to conduct adequate pre-trial discovery generally, therefore, are without merit.  Mr. Broome recited the documents he had in his possession to prepare for the hearing and personally visited the site of the marijuana plots multiple times to investigate.

Although Mr. Chandler cites *Kimmelman v. Morrison*, 477 U.S. 365 (1986) for support of the proposition that failure to conduct *any* pretrial discovery constitutes constitutionally deficient counsel, *Kimmelman* does not apply to this case because Mr. Broome *did* conduct pre-trial discovery.  In addition, the prejudice that resulted in *Kimmelman* from failing to conduct any pretrial discovery was significant to that case: failing to discover and make a timely suppression claim.  Even assuming that Mr. Broome did not conduct any pre-trial discovery and that such a failure is always unreasonable—which would be directly contrary to the statement in *Strickland*,

466 U.S. at 692, about the need to investigate being different in each case depending on the facts—*Kimmelman* would not control because Mr. Chandler does not allege that Mr. Broome failed to discover something as prejudicial as a valid grounds to raise a suppression issue.

As to whether Mr. Broome's failure to depose Investigator Allen constituted ineffective assistance of counsel, Mr. Chandler has not shown Mr. Broome's conduct was deficient because he cannot show that Mr. Broome could have taken such a deposition.  Rule 26 of the Federal Rules of Criminal Procedure provides that "[i]n every trial the testimony of witnesses must be taken in open court, unless otherwise provided by a statute."  Fed. R. Crim. P. 26.  Additionally, Rule 16 states that the rules authorizing discovery in criminal matters do not allow discovery of a statement made by a prospective government witness.  *Id.* at 16(a)(2)(B)(iii); *see also Degen v. United States*, 517 U.S. 820, 826 (1996) ("A criminal defendant is entitled to rather limited discovery, with no general right to obtain the statements of the Government's witnesses before they have testified.").  Because Mr. Chandler cannot show that he would have been entitled to take Investigator Allen's deposition in the first place, he cannot show that Mr. Broome's failure to do so constituted ineffective assistance of counsel.

Ultimately, because Mr. Broome could not have obtained Investigator Allen's deposition or discovered anything more than he already had, Mr. Chandler's claim of ineffective assistance of counsel on this ground fails.  The court need not consider whether Mr. Chandler showed any prejudice because Mr. Broome could not have been ineffective for failing to do the impossible.

### *(v). Failure to File a Motion to Suppress*

Finally, as part of Ground B, Mr. Chandler argues that Mr. Broome's failure to file a motion to suppress the evidence discovered pursuant to Investigator Allen's allegedly unlawful search of Mr. Chandler's vehicle constituted ineffective assistance of counsel.  (Doc. 2, at 13).  Mr. Chandler asserts a similar argument in Ground F, stating that Mr. Broome's decision to file such a "powerful and factually relevant" motion to suppress in his state case is "absolute proof" that he was ineffective in failing to file one in Mr. Chandler's revocation hearing.  (Doc. 11, Exhibit A, at 2).  Likewise, in Ground I, Mr. Chandler alleges Mr. Broome was ineffective in failing to file a motion to suppress and discover Eleventh Circuit precedent that bolster's Chandler's claim that he did not give Investigator Allen consent to search.  (Doc. 28).  Because Mr. Chandler's claims in Grounds F and I essentially restate his claim made in Ground B, the court will consider all of Mr. Chandler's suppression arguments at once.

Although Mr. Broome states in his affidavit that he believes to this day the truthfulness of Mr. Chandler's testimony that he did not give Investigator Allen consent to search his vehicle and four wheelers, he chose not to file a motion to suppress because, based on his experience, Mr. Chandler would have lost in a "swearing match" against Investigator Allen. (Doc. 18, at 7).  Mr. Chandler argues that even though such a motion would have put his word against Investigator Allen's, the court would have found Investigator Allen's story unbelievable; he claims that the Calhoun County Sheriff's Department has a policy to either videotape all traffic stops or to request an accused person to sign a waiver form, and Investigator Allen could not have produced either in support of his claims.  Mr. Chandler argues that, had Mr. Broome

investigated the matter at all, he would have discovered the existence of the policy and the motion would have been successful.[13]

In addition, Mr. Chandler argues that Mr. Broome's subsequent decision to file a motion to suppress in the underlying state case is an implied admission that he made a mistake in not filing one for the revocation hearing.  Mr. Broome explains that he chose to file a motion to suppress in the underlying state case because he felt it would have a greater chance of being successful in light of "Mr. Chandler's reputation in the Calhoun County area for not cooperating with law enforcement officers."  (Doc. 18, at 7).  Mr. Chandler alleges that he and Mr. Broome never discussed the possibility of filing a motion to suppress for his revocation proceedings, and that Mr. Broome's decision not to file the motion to suppress in the federal case, despite his belief that Mr. Chandler did not actually give consent, was "objectively unreasonable."  (Doc. 19, at 16–17).[14]

To make a successful ineffective assistance of counsel claim based on a failure to file a motion to suppress, "a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and

---

[13]  Later, Mr. Chandler states that he is convinced that Mr. Broome knew about the policy and decided not to file the motion to suppress anyway because he wanted to protect Investigator Allen, a family friend he allegedly considers to be like his godson.  (Doc. 28, at 7–8; Doc. 32, at 6–7).  Regardless, Mr. Broome has proffered a reasonable explanation for why he chose not to file the motion to suppress, and Mr. Chandler cannot meet the high burden of demonstrating the decision constitutes ineffective assistance of counsel.

[14]  Mr. Chandler additionally states Mr. Broome coerced him into pleading guilty on the underlying state charges, asserting that even though Mr. Broome had filed a motion to suppress the day before Mr. Chandler agreed to a plea, Mr. Broome would not file for a continuance so the judge could rule on the motion.  (Doc. 11-1, at 2).  All of this information is irrelevant in the current case, however, because the only question before the court is whether Mr. Broome provided ineffective assistance of counsel to Mr. Chandler during the federal revocation hearing.

(3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  Mr. Chandler is unable to meet any of these requirements.

Eleventh Circuit case law suggests that an attorney's decision to forgo filing a motion to suppress is reasonable if the attorney had cause to believe the motion would have been unsuccessful.  *See Zakrzewski*, 455 F.3d at 1260-61 (holding that trial counsel's decision not to file a motion to suppress was reasonable where trial counsel "believed the warrantless search was supported by exigent circumstances and that filing the motion would be futile")*; Brown v. United States*, 219 F. App'x 917, 919 (11th Cir. 2007) (upholding district court's determination that the failure to file a motion to suppress does not constitute ineffective assistance of counsel where the officers had either probable cause to search the car or the authority to search pursuant to the plain view doctrine); *see also Williams v. United States*, 08-14332-CIV, 2009 WL 1916732 (S.D. Fla. Feb. 25, 2009) (holding that petitioner could not show he was prejudiced by his counsel's failure to file a motion to suppress his confession because the motion would likely not have been successful, considering the magistrate judge's determination that the petitioner's self-serving testimony that he had been coerced into signing the statement was not credible).

While Mr. Broome's conclusion that the motion to suppress would be ineffective was based on his determination that Mr. Chandler would lose in a swearing match against Investigator Allen—and not on his belief that Mr. Chandler did not have a legitimate legal basis to move to suppress—the focus in the Eleventh Circuit cases, and the *Strickland* standard in general, is on the reasonableness of the attorney's belief that the motion to suppress would be

unsuccessful.  Because Mr. Broome had spoken with Investigator Allen prior to the revocation

hearing and learned firsthand what Investigator Allen's testimony would be on the issue of

consent, Mr. Broome's decision not to file a motion to suppress based on his previous experience

with swearing matches between police officers and defendants was reasonable.  (Doc. 18, at 6).

Proving that a decision not to file a motion to suppress is objectively unreasonable is

difficult, and the Eleventh Circuit has historically only granted habeas relief on such grounds in

extreme circumstances.  *See Green v. Nelson*, 595 F.3d 1245, 1250 (11th Cir. 2010) (holding trial

attorney's decision not to file a motion to suppress blood and DNA evidence was unreasonable

where the attorney testified that his decision to do so was based on having misread an affidavit as

to which victim was which, and was "absolutely not" a conscious choice or strategy); *Huynh v.

King*, 95 F.3d 1052, 1057 (11th Cir. 1996) (treating as unreasonable the trial attorney's strategy

of purposefully filing a late motion to suppress "in order to obtain more favorable federal habeas

review").  Here, Mr. Broome based his decision not to file a motion to suppress on his experience

with such motions and his knowledge of Investigator Allen's testimony; Mr. Chandler has not

met his burden of showing that Mr. Broome's strategy did not fall within the "wide range of

reasonable professional assistance." *See Strickland*, 466 U.S. 668 at 689.

Additionally, although Mr. Broome later filed the motion to sue in the underlying state

case, Mr. Chandler has not proved that Mr. Broome's decision to tailor his trial strategy to the

court before which he appeared was objectively unreasonable.  Similarly, while Mr. Broome did

not directly address his supposed failure to discover the Calhoun County Sheriff's Department

alleged policy of videotaping all traffic stops or requesting the accused to sign a waiver, his

explanation of his overall strategy still addresses Mr. Chandler's claim: because no video or

waiver exists in this case, the motion to suppress still would have been a "swearing match" between Investigator Allen's testimony that Mr. Chandler did give him verbal consent to search and Mr. Chandler's own self-interested assertion that he did not consent.  Even if Mr. Broome had been aware of the alleged policy requiring video or written waiver prior to a warrantless search, the court cannot conclude that his decision not to file a motion to suppress was unreasonable given Investigator Allen's testimony that he had consent to search.

Assuming *arguendo* that Mr. Broome's conduct was unreasonable, Mr. Chandler still fails to make a prima facie ineffective assistance of counsel claim because he cannot satisfy the second prong of the test and show that his motion to suppress would have been successful.  *See Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006).  In this case, although Mr. Chandler and Mr. Broome both believe Mr. Chandler did not provide Investigator Allen with consent to search the vehicle, Mr. Chandler has not shown that a motion to suppress would likely have led to the evidence actually being suppressed.  Even if Calhoun County Sheriff's Department had a policy of videotaping a stop or getting signed consent before searching a vehicle, for example, Investigator Allen's testimony was still that he had permission to search the vehicle, and Mr. Chandler has not shown that he likely would have been successful.[15]

---

[15]   The cases Mr. Chandler cites (doc. 28, at 3) prove only that the Eleventh Circuit has found that, under certain circumstances, an individual's decision to sign a consent-to-search form will be enough to demonstrate the consent was given voluntarily.  *See United States v. Duncan*, 356 F. App'x 250 (11th Cir. 2009); *United States v. Anthony*, 345 F. App'x 428 (11th Cir. 2006). The cases do not hold that such a form is *required* for consent to be voluntary, and they do not assist Chandler in proving that the court would have granted the motion to suppress.  The issue in this case is not whether the consent was voluntary, but whether it was given at all.  Because that issue would ultimately come down to Investigator Allen's testimony against Mr. Chandler's, Mr. Chandler has a very high bar to meet to show that he would have prevailed.

Finally, even assuming—but not deciding—both that Mr. Broome's decision not to file a motion to suppress was objectively unreasonable and that the motion to suppress would have been successful, Mr. Chandler fails to make an ineffective assistance of counsel claim because he cannot meet the third requirement of showing that the outcome of the revocation hearing likely would have been different.  Even in the absence of the evidence discovered on Mr. Chandler's trailer and in Mr. Chandler's vehicle, the court would have had considerable circumstantial evidence to consider: the proximity of the marijuana plots to Mr. Chandler's home as seen from the government's aerial photographs, Michelle Chandler's testimony that she had suspected her husband of cultivating marijuana, and the knowledge that Mr. Chandler owns a four wheeler and spent considerable amounts of time on it in the woods in the relative vicinity of the marijuana plots.  Because the standard of proof in a revocation hearing requires only that the government prove that Mr. Chandler more likely than not violated the terms of his supervised release, this evidence alone may well have been enough to revoke his supervision.  Therefore, Mr. Chandler has not met his burden of affirmatively proving that he was prejudiced by his attorney's failure to make the motion.[16]

---

[16]  Even if a successful motion to suppress would have weakened the government's case enough to justify continuing the revocation hearing until after the state court proceedings had finished, Mr. Chandler's supervised release would have been revoked upon his entering a guilty plea in the state court case on April 27, 2011.  (Doc. 11-1, Exhibit A, at 2).  A guilty plea is proof beyond a reasonable doubt of guilt, a standard much higher than proof by a preponderance of the evidence required in a revocation hearing.  Mr. Chandler entered that guilty plea, at least in part, based on his knowledge that his co-conspirator brother and his wife would have likely testified against him.  (Doc. 11-1, Exhibit A, at 1; Doc. 18, at 8).  Thus, even had the motion to suppress been successful enough to cause the government to delay the revocation hearing, Mr. Chandler would still be in the same position he is now.  He is unable to affirmatively prove prejudice.

Ultimately, Mr. Chandler cannot show that Mr. Broome's decision not to file a motion to suppress violated his constitutional right to effective assistance of counsel.  Mr. Broome's choice was reasonable in light of his firsthand knowledge of Investigator Allen's anticipated testimony about consent.  Additionally, Mr. Chandler cannot show that, even had Mr. Broome filed the motion to dismiss, it would have been successful.  Finally, Mr. Chandler is unable to prove that, even if successful, the motion to suppress would have changed the outcome of his proceeding.  Because he fails all three prongs of the test outlined in *Zakrzewski*, Mr. Chandler is not entitled to habeas relief on the grounds that Mr. Broome's decision not to file a motion to suppress prior to his federal revocation hearing constitutes constitutionally deficient representation. *See Zakrzewski*, 455 F.3d at 1260.

### 3.  GROUND D: INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO PRESENT POST-REVOCATION HEARING EVIDENCE ESTABLISHING PETITIONER'S ACTUAL INNOCENCE ON DIRECT APPEAL

In Mr. Chandler's fourth ground for relief, he alleges that Mr. Broome was ineffective in failing to meet with Brian Studdard, a fellow inmate who claimed to know who had actually planted the marijuana at issue in Mr. Chandler's case.  (Doc. 2, at 18).   Despite Mr. Broome's assurance that he "w[ould] speak to Studdard for sure," he failed to do so.  (Doc. 2, at 18).  Mr. Chandler claims that Mr. Broome's failure to discover this exculpatory evidence and his failure to raise it on direct appeal—which Mr. Broome filed after learning of Mr. Studdard's alleged testimony—was objectively unreasonable.[17]  (Doc. 2, at 18–19; Exhibit A, at 8).

---

[17]  Mr. Chandler also claims that Mr. Broome acted unreasonably in not rasing the *Arizona v. Gant*, 556 U.S. 332 (2009) suppression issue on direct appeal, even though he did not make a motion to suppress during the revocation hearing.  Because this court determined that Mr. Broome's decision not to make the motion to suppress did not constitute ineffective assistance of counsel, this court cannot say his failure to raise the issue on appeal is constitutionally deficient

In response, the government states that Mr. Broome was not ineffective for failing to raise the issue on appeal because it would not have been a cognizable claim on appeal and actual innocence is not a substantive claim itself, but rather an affirmative defense to procedural default. (Doc. 17, at 7). Mr. Broome admits that he did have knowledge of Mr. Studdard's willingness to testify that another individual, Colin Law, had confessed to him that he was the one responsible for planting the marijuana Investigator Allen found. (Doc. 18, at 7). Mr. Broome, however, fails to explain why he did not meet with Mr. Studdard other than to point out that he was working on a plea deal in the underlying state court criminal case around the same time. (Doc. 18, at 7–8).

In Mr. Studdard's declaration under oath, he states that Colin Law personally told him that Mr. Law had planted the marijuana at issue in Mr. Chandler's case and that Mr. Broome never contacted him, even though he was willing to testify. (Doc. 2, Exhibit B, at 1). Mr. Chandler argues that Mr. Broome was "dut[y]-bound" to raise this issue on appeal, in spite of any perceived procedural limitations, and at the least to investigate the claim. (Doc. 19, at 6–7).

Generally speaking, appellate courts do not consider issues on appeal not raised before the trial court. *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). This rule ensures that parties are not prejudiced by surprise or by being deprived of the opportunity to introduce contrary evidence. *Id.* at 556–57. However, because the purpose of the rules of procedure is to "promote the ends of justice," the United States Supreme Court has recognized that "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all

---

representation—especially in light of the fact that the failure to raise the issue at the revocation hearing would likely have foreclosed its review on direct appeal. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941)*; see also supra* text 27–33.

circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy." *Id.* at 557.

Determining whether a claim may be addressed for the first time on appeal, therefore, is one "[l]eft primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 120–21 (1976).  Although the United States Supreme Court has specifically refused to announce a general rule governing when an appellate court should allow parties to raise an issue for the first time on appeal, it did state that such a course of action would be appropriate when "the proper resolution is beyond any doubt" given the new information, or where "'injustice might otherwise result.'" *Id.* at 121 (quoting *Hormel*, 312 U.S. at 557); *see also CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) ("A primary factor which [the Eleventh Circuit Court of Appeals] consider[s] in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues."); *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) ("Even when the added material will not conclusively resolve an issue on appeal, [the court] may allow supplementation in the aid of making an informed decision.").

These rules make clear that although the appellate court would not have been forced to consider Mr. Studdard's testimony had Mr. Broome raised it on direct appeal, Mr. Broome could have made a justifiable petition for supplementing the record. The question at hand, however, is not whether the appellate court would have allowed the record to be supplemented, but whether Mr. Broome's decision not to investigate the authenticity of Mr. Studdard's testimony or even attempt to raise it constitutes ineffective assistance of counsel. *See Strickland v. Washington*,

466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort

be made . . . to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

the conduct from counsel's perspective at the time.").  Although refusing to raise newly

discovered evidence of claimed innocence may constitute ineffective assistance of counsel under

certain circumstances, this court cannot say Mr. Broome's actions in this case were

constitutionally deficient.

In making this decision, the court must consider the nature of the newly discovered

evidence and its weight in context of all the other evidence before the court. *See Strickland v.*

*Washington*, 466 U.S. 668, 695-96 (1984) ("[A] court hearing an ineffectiveness claim must

consider the totality of the evidence before the judge or jury.").  In this case, the newly

discovered evidence was testimony from a fellow inmate who had heard another inmate confess

to the crime.  Even if the appellate court allowed the record to be supplemented, the district court

on remand may well have found that Mr. Studdard's testimony was inadmissible hearsay or that

it lacked credibility.  More importantly, at the time Mr. Broome failed to investigate the truth

behind Mr. Studdard's statement, he was in the middle of negotiating a guilty plea for Mr.

Chandler in the underlying state case.  (Doc. 18, at 7–9).  Mr. Broome reasonably may have

doubted the utility of investigating Mr. Chandler's claim of innocence when Mr. Chandler's wife

and co-conspirator brother were both slated to testify against him at trial.[18]  (Doc. 11, Exhibit A,

at 1; Doc. 18, at 8).  Although perhaps the most responsible course of action Mr. Broome could

_____

[18]  Although Mr. Chandler claims he was pressured into signing the plea agreement, the
information Mr. Broome gave Chandler to encourage him to sign the plea agreement is the kind
of information a defense attorney should provide a client: information about what co-conspirators
have agreed to testify against the defendant, information about the waiving of spousal privilege,
and information about the possibility of receiving the maximum sentence.

have taken would have been to investigate the substance of Mr. Studdard's statement and then make an informed decision as to whether proffering the evidence on direct appeal would be worthwhile, this court cannot say that "no reasonable lawyer, in the circumstances [Mr. Broome found himself], would have" made the same decision. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). "Counsel is not required to present every nonfrivolous defense" when representing a criminal defendant, and Mr. Chandler has not shown that Mr. Broome's failure to assert this defense was objectively unreasonable. *See Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000).

Even had Mr. Broome's decision not to raise the issue on appeal been unreasonable, Mr. Chandler has not shown he was prejudiced by the failure. The likely success of the motion is uncertain, given the appellate court's complete discretion in deciding whether to allow the record to be supplemented.  In addition, even if the appellate court had supplemented the record, the district court would have had to weigh the admissibility and credibility of the evidence. Assuming, for the sake of argument, that this court determined the testimony was both admissible and credible, Chandler still cannot show that a reasonable probability exists that the outcome of the proceeding would have changed.  In its decision to revoke Mr. Chandler's supervised release, this court cited considerable circumstantial evidence implicating Mr. Chandler.  Even if this court found Mr. Studdard's testimony credible, the court may have determined that Mr. Chandler was more likely than not involved in cultivating marijuana. Because multiple plots were discovered near Chandler's home, for example, it would be possible for both Mr. Chandler and Mr. Law to have been guilty of the crime, each being responsible for different marijuana plants.  In short, because Mr. Chandler did not address any of the possible

37

pitfalls involving his newly discovered evidence, he fails to meet his burden of affirmatively proving prejudice.

### 4.  GROUNDS E, G, AND E1: INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO MOVE FOR DISMISSAL OF REVOCATION PROCEEDINGS BASED ON VARIOUS VIOLATIONS OF MR. CHANDLER'S FOURTH AND FIFTH AMENDMENT RIGHTS

Mr. Chandler also alleges that Mr. Broome was ineffective in failing to move to dismiss the revocation proceedings on the basis of the government's various Fourth and Fifth Amendment violations.  He alleges: (1) that Investigator Allen arrested Mr. Chandler without an arrest warrant (Ground E); (2) that Investigator Allen searched Mr. Chandler's home without a search warrant (Ground E); (3) that the search warrant used to search Mr. Chandler's home was tainted by a misleading affidavit (Ground G); (4) that Investigator Allen failed to advise Mr. Chandler of his *Miranda* rights at the time of or following his arrest (Ground E); and (5) that the government failed to bring Mr. Chandler before a magistrate judge within forty-eight hours after his warrantless arrest (Ground E1).

The government contends that even if Investigator Allen did not have an arrest warrant, that failure would have "no bearing on the evidence presented at the revocation hearing" because Mr. Chandler's arrest itself did not lead to the discovery of any evidence.  (Doc. 17, at 8). Similarly, as to Mr. Chandler's allegation that the police searched his home without a search warrant, the government states that it both had a search warrant and provided a copy of the warrant and accompanying affidavit to Mr. Broome.  (Doc. 17, at 8).  Mr. Broome's own affidavit confirms that he received a copy of the application for search warrant, the affidavit in support of the application, the search warrant dated June 15, 2010, and the return and inventory

dated June 15, 2010. (Doc. 18, at 3).  Moreover, the government points out that, even if the search warrant of Mr. Chandler's home were tainted, Mr. Chandler cannot show any prejudice in the case because none of the evidence offered at the revocation hearing came from that allegedly defective search warrant.  (Doc. 31, at 1).  The government also claims that any alleged *Miranda* violations would not have had any effect on the revocation hearing because the government offered no evidence of any post-arrest custodial statements by Mr. Chandler.  Finally, as to Mr. Chandler's claims that he was not brought before a magistrate judge within forty-eight hours of his warrantless arrest, the government states that because federal officers did not arrest him, the government did not violate his constitutional and federal rights.  (Doc. 31, at 3).

In reply, Mr. Chandler alleges that Mr. Broome was ineffective in not sharing with him the fact that Mr. Broome had received documentation of the arrest report and search warrant. (Doc. 19, at 8).  Mr. Chandler states that Mr. Broome's failure prejudiced his case both because Mr. Chandler was unable to prepare sufficiently to testify and because Mr. Broome did not use the lack of arrest warrant and tainted search warrant to undermine Investigator Allen's credibility.  (Doc. 19, at 8). Additionally, Mr. Chandler states that the reason the government did not introduce any evidence obtained from the search warrant is that it did not find any when it searched Mr. Chandler's home.  (Doc. 32, at 2).  Mr. Chandler also argues that because Investigator Allen did not read Mr. Chandler his *Miranda* rights prior to allegedly gaining consent to search the vehicle, Mr. Chandler was prejudiced by Investigator Allen's conduct, even if the government did not introduce any incriminating statements.  (Doc. 19, at 8; Doc. 24-1, at 1).  Finally, Mr. Chandler states that whether under state or federal charges, his Fourth Amendment Constitutional rights were violated when he was not brought before a magistrate

judge within forty-eight hours of his warrantless arrest, and Mr. Broome should have pursued those claims.  (Doc. 32, at 9).

### *(i). Fourth Amendment Unreasonable Search and Seizure*

In addressing Mr. Chandler's claims that Mr. Broome was ineffective in failing to move for dismissal of the revocation hearing on the grounds that (1) that Investigator Allen arrested Mr. Chandler without an arrest warrant (Ground E); (2) that Investigator Allen searched Mr. Chandler without a search warrant (Ground E); and (3) that the search warrant was tainted (Ground G), this court finds Mr. Broome's conduct was not ineffective.

Even assuming *argundo* that Investigator Allen searched Mr. Chandler's home illegally—either because he lacked a search warrant or because the search warrant was invalid—and that Investigator Allen unlawfully arrested Mr. Chandler without a search warrant, Mr. Chandler is not entitled to any remedy because Investigator Allen did not offer any evidence resulting from the allegedly unlawful search and seizure.  (Doc. 32, at 2); *see United States v. Calandra*, 414 U.S. 338 (1974) ("[S]tanding to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search.").  Because Mr. Chandler would not have had any remedy for these alleged constitutional violations, Mr. Broome's decision not to file a motion to dismiss the revocation hearing was reasonable.

Likewise, because the government did not obtain or offer any evidence as a result of the allegedly unconstitutional search and seizure, Mr. Chandler is unable to show Mr. Broome's failure to file a motion prejudiced Chandler in any way.  Mr. Chandler's outcome at the revocation hearing would not have changed, and Mr. Chandler's vague assertion that Mr.

Broome could have used Investigator Allen's failure to obtain a search or arrest warrant to impeach him during the revocation hearing is not specific enough to show prejudice. (*See* Doc. 19, at 8).

### (*ii*). *Fifth Amendment Right Against Self-Incrimination*

The same rationale applies to Mr. Chandler's claim that Mr. Broome was ineffective in failing to move to dismiss the revocation proceedings on the ground that Investigator Allen failed to inform Mr. Chandler of his *Miranda* rights at the time of his arrest (Ground E). (Doc. 8). The government points out that, even if Investigator Allen failed to inform Mr. Chandler of his *Miranda* rights at the time he was arrested, Mr. Chandler does not allege that he made any incriminating statements or that any were introduced at the revocation hearing. Thus, Mr. Broome's failure to file a motion to dismiss the revocation proceedings on this ground was not unreasonable.

Mr. Chandler's reply reveals his misunderstanding of the purpose of informing an arrestee of his *Miranda* rights. He states that because he allegedly gave consent to search prior to Investigator Allen reading Mr. Chandler his *Miranda* rights, Investigator Allen's own testimony is evidence that Mr. Chandler's Fifth Amendment rights were violated.[19] However, even assuming, for the sake of argument, that Mr. Chandler had given Investigator Allen consent to search his vehicle while in custody and prior to being apprised of his *Miranda* rights, "'consent

---

[19] The timing of Mr. Chandler's arrest is unclear. Mr. Chandler argues that he was arrested and placed in custody at the time Investigator Allen searched Mr. Chandler's vehicle. (Doc. 11, Exhibit A, at 9). However, Investigator Allen appears to suggest Mr. Chandler gave him consent to search the vehicle at the very beginning of the stop, prior to the arrest. *Chandler et al.*, Case No. 1:04-cv-00046-KOB-PWG, (Doc. 92, at 25). For the purpose of this argument, the court assumes that Mr. Chandler was in custody and, thus, should have been advised of his *Miranda* rights.

to search is not a self-incriminating statement; [i]t is not in itself evidence of a testimonial or communicative nature.'" *United States v. Hidalgo*, 7 F.3d 1566, 1568 (11th Cir. 1993). Thus, Mr. Chandler's alleged grant of consent while in custody and prior to being read his *Miranda* rights would not have violated his Fifth Amendment right against self-incrimination. Because Mr. Chandler did not allege that he made any *other* disclosures while in custody and prior to hearing his *Miranda* rights that led to the discovery of any evidence used against him or that the government attempted to use against him in any way at the hearing, he cannot show that Mr. Broome's decision not to file a motion to dismiss the proceedings based on Investigator Allen's failure to advise Mr. Chandler of his *Miranda* rights was unreasonable. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990 ("Although conduct by law enforcement officials prior to trial may ultimately impair [the privilege against self-incrimination], a constitutional violation occurs only at trial.").

Similarly, even if Mr. Broome's decision not to move to dismiss the revocation proceedings were somehow unreasonable, Mr. Chandler cannot show that he suffered any prejudice. He does not allege he made any self-incriminating statements, and the government did not introduce any evidence tainted by any statement Mr. Chandler may have made. Thus, Mr. Chandler cannot meet his burden of showing prejudice.

### (*iii*). *Fourth Amendment Probable Cause Determination Before a Magistrate Judge*

This court must similarly determine that Mr. Broome was not ineffective in failing to challenge the fact that Mr. Chandler was not taken before a magistrate judge within forty-eight hours of his warrantless arrest. (Ground E1). Although the government's explanation of why

Mr. Broome was not ineffective in failing to raise this issue rests on an incorrect statement of the law[20], Mr. Chandler has not met his burden of proof showing ineffective assistance of counsel. The United States Supreme Court has made clear that claims involving a state's failure to promptly bring an individual arrested without a warrant before a magistrate judge for a probable cause determination are not grounds to challenge a conviction, even though such conduct violates an individual's Fourth Amendment rights. *See Gerstein v. Pugh*, 420 U.S. 103, 118 (1975) (clarifying that even though the Court deemed Florida's law requiring only a prosecutor's assessment of probable cause before making an arrest unconstitutional, the Court was not "reatreat[ing] from the established rule that illegal arrest or detention does not void a subsequent conviction."). Thus, because Mr. Chandler would not have been entitled to have the revocation hearing dismissed on those grounds, Mr. Broome was not ineffective in failing to bring such a motion.

---

[20] The government argues that because Mr. Chandler was not arrested by federal authorities, he did not suffer an injury to his federal or constitutional rights; thus, Mr. Broome's failure to raise the issue was not unreasonable. However, the Fourth Amendment requires all states to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 124–25 (1975). In clarifying the parameters of "promptly after arrest," the United States Supreme Court has stated that all state laws providing for judicial determinations of probable cause within forty-eight hours of arrest will generally satisfy this requirement, but all state laws that delay longer *may* be in violation of the Constitution if the arrested individual can prove that his probable cause determination was "delayed unreasonably." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Thus, if state authorities did not bring Mr. Chandler before a magistrate judge within forty-eight hours after his warrantless arrest, he may have been able to assert a valid claim that his rights were violated if he could show the delay was unreasonable. For the purpose of this petition, the court assumes that the state did violate Mr. Chandler's right to a prompt judicial determination of probable cause after his warrantless arrest.

Similarly, even if Mr. Broome provided ineffective assistance of counsel in failing to raise a meritless claim, Mr. Chandler cannot prove that he was prejudiced by Mr. Broome's ineffectiveness because he was not entitled to any remedy "sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

## 5. MISCELLANEOUS CLAIMS

In Mr. Chandler's final reply, he makes new legal claims against Mr. Broome. Mr. Chandler alleges both that Mr. Broome's affidavit constitutes perjury and that Mr. Broome's conduct throughout the revocation hearing and appeal amounts to obstruction of justice. (Doc. 32, at 11–21). Mr. Chandler draws on the same factual allegations he made previously to assert these new legal claims. Because Mr. Chandler makes these claims for the first time in his reply—and after this court instructed Mr. Chandler that he would have "no *additional* opportunities to amend his motion," (doc. 30, at 1)—the government did not respond. Even if this court accepts Mr. Chandler's untimely claims, however, he fails to show he is entitled to habeas relief on either ground.

Mr. Chandler's allegation that Mr. Broome committed perjury in making various representations in the affidavit he prepared to answer Mr. Chandler's claims of ineffective assistance of counsel has no bearing on Mr. Chandler's habeas motion. Even if true, Mr. Chandler's allegations of perjury relate to statements made *after* Mr. Chandler's revocation hearing and subsequent appeal. Thus, Mr. Chandler cannot show how this additional claim of perjury provides an independent basis for relief when § 2255 claims must be limited to those showing that his "sentence was imposed in violation of the Constitution or laws of the United States." *See* 28 U.S.C. § 2255. This court has already addressed whether Mr. Broome provided

44

ineffective assistance of counsel and has already discussed the discrepancies in Mr. Broome's

account of his preparation with Mr. Chandler's version.  The court notes that mere discrepancies

between two people's version of facts does not mean that either person is guilty of perjury.  Thus,

Mr. Chandler fails to make an independent claim of habeas relief on the ground that Mr.

Broome's alleged subsequent act of perjury in any way contributed to Mr. Chandler's current

confinement.

Additionally, Mr. Chandler fails to state a claim for habeas relief on the ground that Mr.

Broome's representation constituted an alleged obstruction of justice.  The operative provision of

federal law Mr. Chandler cites states:

> Whoever corruptly (1) alters, destroys, mutilates, or conceals a record, document,
> or other object, or attempts to do so, with the intent to impair the object's integrity
> or availability for use in an official proceeding; or (2) otherwise obstructs,
> influences, or impedes any official proceeding, or attempts to do so, shall be fined
> under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).  Mr. Chandler's allegation that Mr. Broome violated this law in his

representation lacks foundation.

Because this court has already stated at length the reasons Mr. Broome's conduct at the

revocation hearing and on appeal—which is the same conduct Mr. Chandler uses to support his

claim of obstruction of justice—did not constitute ineffective assistance of counsel, it will not

again repeat all the reasons why Mr. Broome's conduct also does not constitute obstruction of

justice, a more grave form of misconduct.  Mr. Chandler alleges no new facts to support his

allegation of obstruction of justice, and this court cannot find any basis in the record to support

his conclusory allegation that Mr. Broome corruptly and intentionally lost the revocation hearing

to protect Investigator Allen.  Mr. Chandler's new claim, therefore, fails to state an independent

basis for relief.

## III. CONCLUSION

For the reasons previously stated, the court will DENY Eddie Michael Chandler's motion

to vacate, set aside, or correct his sentence.

DONE and ORDERED this the 20th day of June, 2014.

_Karon O. Bowdre_

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

46